UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

In re:

PREMIER CONSTRUCTION
GROUP, LLC,                                             BR Case No.        3:11-bk-4441-JAF
_____/

PREMIER CONSTRUCTION
GROUP, LLC,

          Appellant,

-vs-                                                    Case No.           5:14-cv-175-Oc-PRL

AMY DENTON HARRIS, BRETT A.
MEARKLE, JOEL S. TREUHAFT,
BUDDY D. FORD, and STICHTER
RIEDEL BLAIN & PROSSER, P.A.,

          Appellees.
_____/

## MEMORANDUM OPINION

This is an appeal from orders entered by the Bankruptcy Court granting in part and denying in part applications for fees and expenses submitted by four separate law firms at the conclusion of a Chapter 11 proceeding in bankruptcy. This Court has jurisdiction of the appeal under 28 U.S.C. § 158.

The Appellant is the Debtor in the completed Chapter 11 case. The Appellees are the law firms, respectively, that sequentially represented the Debtor, one after the other, during the Chapter 11 proceeding.[1]

The Debtor's notice of appeal seeks review of separate orders disposing of fee and expense applications submitted by the four firms.[2] No briefs have been filed – and no cross appeals have been initiated – by three of the firms, Mearkle, Palm Harbor and Ford, although the Bankruptcy Court substantially reduced the fees sought by each of them. Stichter Riedel has filed a brief and defends the order of the Bankruptcy Court awarding that firm's requested fees and expenses without change.

After full consideration of the briefs and the record, the Court has determined that the Bankruptcy Court should be affirmed in all respects.[3]

---

[1] Those firms are: Law Office of Brett A. Mearkle, P. A. (Mearkle); Palm Harbor Law Group, P. A. (Palm Harbor); Buddy D. Ford, P. A. (Ford); and Stichter, Riedel, Blain & Prosser, P. A. (Stichter Riedel). Mearkle filed the Chapter 11 bankruptcy petition for the Debtor on June 16, 2011. On June 12, 2012 – a year later – Mearkle withdrew as counsel and the Debtor employed Palm Harbor. Two weeks later, on June 26, 2012, Palm Harbor withdrew and the Debtor then engaged Ford who also withdrew some seven months later in April, 2013. The Debtor then employed Stichter Riedel which thereafter represented the Debtor through the remainder of the proceeding and the entry of an order on August 2, 2013, confirming a Second Amended Chapter 11 Plan of Reorganization.

[2] The Bankruptcy Court entered an omnibus or global order dealing with all four fee applications (Doc. 1-61) followed by entry of four separate orders implementing the conclusions reached in the global order (Docs. 1-3; 1-4; 1-5; 1-6).

[3] The Debtor, in its reply brief, sought oral argument. Stichter Riedel did not. The Court has determined that the facts and legal arguments are adequately presented in the briefs and the record; that the decisional process would not be significantly aided by oral argument (see Fed. R. App. P. 34(a)(2)(c), and M.D. Fla. Local R. 3.01(j)); and that incurring still more attorney's fees attributable to an oral argument session is unwarranted.

**I**

Orders denying evidentiary hearings and awarding or denying attorneys fees are reviewed for an abuse of discretion. American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999); Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303-04 (11th Cir. 1988). See also In re: Rasbury, 24 F.3d 159, 168 (11th Cir. 1994) ("[U]nder the abuse of discretion standard of review there will be occasions in which we affirm the . . . court even though we would have gone the other way had it been our call. . . . [T]he abuse of discretion standard allows 'a range of choice for the . . . court, so long as that choice does not constitute a clear error of judgment.'") (quoting United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989)).

**II**

In Norman, supra, the court of appeals observed that the law regarding the measure of allowable attorney's fees has evolved over time since the landmark decision in Johnson v. Georgia Highway Express, 488 F. 2d 714 (5th Cir. 1974) listing twelve factors courts should consider in calculating the amount of awardable attorney's fees. Citing five Supreme Court decisions rendered between 1983 and 1987, beginning with Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933 (1983),[4] the court of appeals acknowledged in Norman that application of the factors identified in

---

[4] The other four decisions were: Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541 (1984); City of Riverside v. Rivera, 477 U.S. 561, 106 S. Ct. 2686 (1986); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 106 S. Ct. 3088 (1986) ("Delaware Valley I"); and Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S. Ct. 3078 (1987) ("Delaware Valley II").

Johnson as the necessary determinants in any attorney's fee decision has now been supplanted by the "lodestar" method – a decisional process that is streamlined and more objective, and consisting of: (1) a determination of a reasonable hourly rate, (2) multiplied by the number of hours reasonably expended on the work that was accomplished. The Johnson factors remain as viable considerations, but only to the extent that they might affect the determination of a reasonable hourly rate. Norman, 836 F.2d at 1298-1300.[5]

In Hensley, the Supreme Court also emphasized the broad range of judicial discretion accorded to the trial judge in determining fees, and it cautioned that "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437, 103 S. Ct. at 1941. This admonition has several corollaries, one of which is that while a petitioner seeking an award of attorney's fees has the initial burden of establishing the reasonableness of the hourly rate and the number of hours expended, "[t]hose opposing fee applications have obligations, too. In order for courts to carry out their duties in this area 'objections and proof from the opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'"

---

[5] Under the Bankruptcy Code, 11 U. S. C. §§ 1107 and 330, a debtor in possession in a Chapter 11 proceeding may employ counsel who is then entitled to a fee as determined under § 330(a)((3). The latter section was completely re-written by Congress in 1994 to make it clear that ". . . the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under title 11." H.R. Rep. No. 103-835, reprinted in 1994 U.S.C.C.A.N. at 3340. As such, the lodestar method under Hensley and its progeny, including Norman, applies with equal force to fees in bankruptcy cases as it does to other cases in general, but subject to the bankruptcy requirement specified in 11 U. S. C. § 330(a)(3)(C) that the services rendered were beneficial to the bankruptcy estate.

American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999) (quoting Norman, 836 F.2d at 1301). See also American Charities For Reasonable Fundraising Regulation, Inc. v. Pinellas County, 278 F. Supp. 2d 1301, 1316 (M.D. Fla. 2003); Dominguez v. Quigley's Irish Pub, Inc., 897 F. Supp. 2d 674, 681 (N.D. Ill. 2012). And:

> Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing. Hensley, 461 U.S. at 433, 103 S. Ct. at 1939. Gaines v. Dougherty County, 775 F. 2d at 1571; Carr v. Blazer Financial Services, Inc., 598 F.2d 1368, 1371 (5th Cir. 1979).

Norman, 836 F.2d at 1303.

### III

(a.)   Mearkle.  Mearkle's application (Doc. 1-27) sought an award of fees in the amount of $30,545 and expenses in the amount of $26.75. The application reflected a paid retainer of $15,000 to be credited against the total being sought, leaving a requested balance of $15,545. The total time expended by the firm was shown to be 113.8 hours at hourly rates of $300 per hour for Mr. Mearkle, $225 per hour for an associate lawyer (which involved a charge of one hour for attending one hearing), and $100 per hour for work performed by a paralegal and a legal assistant.

The Debtor's objection to Mearkle's application (Doc. 1-50) was 25 pages in length and consisted almost entirely of claims of neglect, mismanagement, failure to accomplish the Debtor's goals, violation of a capped fee agreement and repeated assertions of "Mearkle's negligent, unresponsive, unethical and defiant actions. . ."

5

(Doc. 1-50 at pp. 9, 11). There was, however, no reference to or an analysis of the <u>specific</u> hours expended for work performed as claimed on the Mearkle fee application, and no objection whatever to the reasonableness of the <u>specific</u> hourly rates for the services being claimed.

The Bankruptcy Court summarized the Debtor's objections to the Mearkle fee application as follows (Doc. 1-61, pp. 4-5):

> Debtor objects to the Mearkle Firm's Fee Application on the bases, among others, that: (1) the amount sought exceeds the parties' capped fee agreement; (2) Mr. Mearkle waited two months after the filing of the petition to file a motion to use cash collateral seeking authorization to use certain lease revenues, despite the urgent nature of such relief, and failed to represent to the Court that Debtor had a significant equity cushion in the property, which was the subject of the motion; (3) Mr. Mearkle consented on Debtor's behalf to a motion for relief from stay despite the fact that Debtor did not consent to the relief without a number of conditions; (4) Mr. Mearkle failed to timely seek clarification of the February 14, 2012 adequate protection order which required the transfer from CenterState Bank to Debtor of property which had been previously erroneously transferred from Debtor to CenterState Bank; and (5) Mr. Mearkle failed to timely file a number of required documents, including a plan of reorganization.

The Bankruptcy Court then concluded that (Doc. 1-61, pp. 6-7):

> [I]t is clear that the Mearkle Firm's representation of the Debtor involved a number of missteps. Most importantly, the case languished with the Mearkle Firm at the helm, with no Chapter 11 plan of reorganization being filed for the year during which it represented Debtor.* [Footnote: *By the same token, however, during that year, Debtor enjoyed the protection of the automatic stay and kept its creditors at bay.] Upon a review of the Mearkle Firm's Fee Application and the factors set forth in § 330, the Court concludes that a reasonable fee for the Mearkle Firm's services is

6

> $15,000.00, [the amount of the retainer already paid.] The Court will also award expenses of $26.75.

(b.)  <u>Palm Harbor</u>.  After a year of failure on the part of the Mearkle firm to successfully advance the case toward approval of a plan of reorganization, the Debtor discharged Mearkle in early June, 2012, and employed Palm Harbor.  That relationship quickly soured, however, and Palm Harbor withdrew after two weeks as counsel of record.

The fee application of the Palm Harbor firm (Doc. 1-20) claimed 62.7 hours expended and sought a fee of $23,260.00.  The Debtor filed a lengthy objection (Doc. 1-49) and the Bankruptcy judge summarily disposed of the issue, saying (Doc. 1-61, page 7):

> PHLG [Palm Harbor] seeks fees in the amount of $23,260.00.  PHLG's representation of Debtor was short lived and appears to have accomplished very little, if anything.  Upon a review of PHLG's Fee Application and the factors set forth in § 330, the Court concludes that a reasonable fee for PHLG's services is $2,000.00.

(c.)  <u>The Ford Firm</u>.  After discharging Palm Harbor, the Debtor engaged the Ford firm in August, 2012, until that firm was also dismissed at the end of February, 2013.

Ford's fee application (Doc. 1-30) sought a total of $51,955.00 in attorney's fees plus $1,303.94 in expense reimbursement, with a credit to be applied in the amount of $20,000.00 representing an original retainer, leaving a balance sought of $33,258.94. The application contained, with attachments, detailed schedules showing the dates and descriptions of each task performed, and the name and hourly rate of

the lawyer doing the work (a maximum of $350 per hour for the senior lawyer on the case).

The Debtor's objection (Doc. 1-51) did not <u>specifically</u> challenge any single entry or entries on any of the claimant's schedules concerning the hourly rate that was charged, or the number of hours expended on any particular task, transaction or event. Rather, the objection was couched in the following, general allegations (Doc 1-51, pp. 1-2):

> The Debtor's objection to the claimed fees of Buddy D. Ford, Esquire is predicated upon facts which demonstrate that the fees for services rendered by Mr. Ford are not in accordance with Section 330(a) of the U. S. Bankruptcy Code and are excessive, unreasonable, did not benefit the Debtor's estate, resulted in substantial delay and the incurrence of substantial additional claimed fees of Debtor's subsequent counsel, involved incompetence by Mr. Ford, are not consistent with the parties' capped fee agreement, and Mr. Ford's application, as well, inaccurately reflects claimed fees for time and services not actually rendered.

This passage was then followed by a recitation of four objectives or expectations on the part of the Debtor that Ford allegedly failed to accomplish: (A) failure to file pleadings seeking correction of prior counsel's mistakes in an earlier Order Granting Adequate Protection; (B) failure to file appropriate pleadings to recover certain payments Debtor had made to a bank; (C) failure to file appropriate pleadings to have the court reconsider an earlier order permitting late filing of certain unsecured claims; (D) failure to file appropriate pleadings for a hearing on the court's authorization to the Debtor to pay a manager's salary (Doc. 1-51, pp. 3-5).

The Bankruptcy Court reviewed the Ford fee application and the Debtor's objections, and said this (Doc. 1-61, pp. 7-8):

> The Ford Firm seeks fees in the amount of $51,955.00 and expenses in the amount of $1,303.94. While Debtor alleges that the Ford Firm agreed to prosecute the case for a capped fee of $12,000.00, Debtor failed to attach to its objection an engagement letter or fee contract evidencing a capped fee. Additionally, the Court does not agree with Debtor's assertion that the Ford Firm did not make any meaningful progress in the case beyond preparing and filing a disclosure statement and plan. At the time the Ford Firm was engaged, the case had been pending for over a year. Debtor had been represented by and [had] terminated two law firms. The monthly operating reports for May and June were delinquent. The United States Trustee had submitted its Verified Statement of Non-Compliance and a proposed order dismissing the case for failure to comply with the show cause order. Finally, no disclosure statement or plan of reorganization had been filed. As the Court noted, the Ford Firm filed the plan and disclosure statement on the day it filed its application for employment. On that same day, the Ford Firm also filed the May and June monthly operating reports. While the Ford Firm was unable to get the case confirmed during the approximate eight months it represented Debtor, its efforts prevented the case from being dismissed and resulted in the case getting back on track. Upon a review of the Ford Firm's Fee Application and factors set forth in § 330, the Court concludes that a reasonable fee for the Ford Firm's services is $35,000.00. The Court will also award expenses of $1,303.94.[6]

IV

A.  <u>The Fee Awards to Mearkle, Palm Harbor, and Ford</u>. The fact that these three firms have not responded in this appeal by filing a reply brief does not mean that

---

[6] The reduction of the claim for fees from $51,955.00 to $35,000.00 (followed by application of a $20,000.00 credit for the retainer already paid) resulted in an additional out-of-pocket obligation of $15,000.00 rather than the $33,258.94 being sought, *i.e.*, the Bankruptcy Court reduced Ford's net fee claim by more than half.

9

the Bankruptcy Court's modified award of fees to each of them must be reversed by default. On the contrary, the Judgments of the Bankruptcy Court are presumptively correct and are entitled to the same, deferential standard of review with or without a supporting brief from the Appellees.[7]

Here, the Bankruptcy Court substantially reduced the fees being sought by these three law firms, so that the appealing Debtor's objections were hugely successful, not unsuccessful. Mearkle's fee was cut in half and was effectively limited to the retainer already paid by the Debtor. There was no additional out-of-pocket obligation. Palm Harbor's fee was reduced from $23,260 to $2,000; and Ford's fee was reduced from $51,955 to $35,000, with a $20,000 retainer credit being applied so that the net out-of-pocket obligation of the Debtor to Ford was $15,000.[8]

In the aggregate, therefore, the Bankruptcy Court reduced the combined attorney's fee claims of $105,760 ($30,545 claimed by Mearkle; $23,260 claimed by Palm Harbor; and $51,955 claimed by Ford) to a contemporaneous out-of-pocket fee obligation of $17,000 ($2,000 to Palm Harbor and $15,000 to Ford). And there is no cross appeal challenging any of those reductions.

---

[7] See United States v. Garami, 184 B.R. 834, 835 (M.D. Fla. 1995) ("Although this failure [to file an Appellee's brief] may be prejudicial to the Debtor's position, Appellant is not entitled to automatic reversal of the order from which it appealed.") (citations omitted). See also, In re Silk Plants, 100 B.R. 360, 363 (M.D. Tenn. 1989).

[8] Lump sum or across-the-board reductions in fees are authorized by the law of the circuit. See Loranger v. Stierheim, 10 F.3d 776 (11th Cir. 1994); Bivens v. Wrap It Up, Inc., 380 Fed. Appx. 888, 891 (11th Cir. 2010) ("If the district court finds that the number of hours claimed is unreasonably high, the court may either conduct an hour-by-hour analysis or it may reduce the hours using an across-the-board cut.") (citations omitted).

In the absence of any particularized objection by the Debtor to the hours or rates claimed by the three law firms, coupled with the Bankruptcy Court's substantial lump sum reductions, after applying its own expertise and making its own evaluation of the services performed (or not performed), the Court cannot say that the Bankruptcy Court abused its discretion in any way. The Debtor has failed to demonstrate any clear error in judgment.

V

Stichter Riedel was employed by the Debtor in mid February, 2013, and was successful in getting a plan of reorganization approved by the Bankruptcy Court on August 2, 2013. During its representation, Stichter Riedel filed two applications for an award of fees and expenses (Docs. 1-33 and 1-45). The first covered the period from February 15 through April 3, 2013, and sought $27,043.50 in attorney's fees and $693.78 in expenses for a total of $27,737.28. The requested fee was based upon an expenditure of 93.1 hours at a blended hourly rate of $290.48.

The second, supplemental application, covered the period April 4 through August 2, 2013. It sought fees in the amount of $55,806.00 and expenses of $3,075.19 for a total award of $58,881.19. The requested fee was based upon an expenditure of 201.1 hours at a blended hourly rate of $277.50.

Taken together, the two applications sought a total of $84,849.50 in fees and $3,768.97 in costs or expenses. The requested fee was supported by a total of 294.2 hours of professional work at a blended rate of $288.56 per hour. Attached to the applications were detailed schedules accounting for each hour of work performed,

showing the date and the nature of the task accomplished, as well as the name of the lawyer or staff professional who did the work.

As in the case of its opposition to the other applications for attorney's fees, the objection filed by the Debtor with respect to the fee petitions of Stichter Riedel was largely general and non-specific. It began with a narrative statement that did not identify any specific hourly rates or specific hours of work being challenged as unreasonable. Rather, the Debtor's narrative objection was stated this way (Doc. 1-52, pp. 1-2):

> The Debtor's objection to the claimed fees of Stichter, Riedel, Blain & Prosser, P.A. is predicated upon facts which demonstrate that the fees for services rendered by Stichter, Riedel, Blain & Prosser, P.A. are not in accordance with Section 330(a) of the U. S. Bankruptcy Code and are excessive and unreasonable. Stichter, Riedel, Blain & Prosser, P.A.'s application, as well, reflects claimed fees for time and services incurred for travel time, inter-office conferences, and multiple attorney time relating to the same matters handled by their firm on behalf of the Debtor. Therefore, the Debtor respectfully requests this Honorable Court to reduce the claimed fees and expenses of Stichter, Riedel, Blain & Prosser, P.A. and based upon the matters and factual basis set forth herein, and applicable law.

This general objection was followed by somewhat more particularized claims of excessive hours having been expended with regard to: (1) 23 hours on the application of employment; (2) 62 hours on unspecified contested matters; and (3) 100 hours relating to "plan confirmation matters." (Doc. 1-52, pp. 2-3). Yet, while these complaints were stated with more specificity than the general narrative objection, there were no sharply drawn issues necessitating an evidentiary hearing.

The Bankruptcy judge, applying his own special expertise, coupled with his familiarity with the file and the work involved in administering the estate leading up to confirmation of the plan, was able on the basis of the papers presented to evaluate the reasonableness of the hourly rates being charged as well as the reasonableness of the number of hours worked on each task.  As stated by the court in Zelaya/Capital Intern. Judgment, LLC v. Zelaya, 769 Fd.3d 1296, 1306 (11th Cir. 2014) "[t]he record in this case is sufficiently clear to allow the district court to resolve the attorney-fees issue without a hearing."  See also Gonzalez v. J. C. Penney Corp, 209 Fed. Appx. 867, 870 (11th Cir. 2006).

Thus, after reviewing the history of the case and the factors enumerated in 11 U. S. C. § 330(a)(3)(A) relative to attorney's fees in bankruptcy cases, the Bankruptcy Court approved the Stichter Riedel applications, saying (Doc. 1-61, p. 8):

> The Stichter Riedel Firm took over representation of Debtor as Debtor's fourth law firm in a case that had been pending for approximately twenty months and was able to get a plan confirmed within four months.  As the Stichter Riedel Firm aptly points out, while Rick Suggs, Debtor's principal, may not have gotten everything on his wish list in terms of confirmation, the case was a success as a result of the Stichter Riedel Firm's efforts.  Upon review of the Stichter Riedel Firm's First Application and Amended Supplement and the factors set forth in § 330, the Court concludes that a reasonable fee for the Stichter Riedel Firm's services is $82,849.50.  Additionally, the Stichter Riedel Firm is entitled to reimbursement for expenses in the amount of $3,768.97.

**CONCLUSION**

Upon thorough review, the debtor has failed to demonstrate that the Bankruptcy Court abused its substantial judicial discretion in deciding the attorney fees issues without a hearing. The Court substantially reduced the fees claimed by the law firms which were unsuccessful in securing entry of a plan of reorganization, and granted the application of Stichter Riedel that was submitted in substantial detail with respect to the work performed, the hours expended and the rates being claimed. The record was sufficient to enable the Bankruptcy judge to fully consider and pass on the objections in the form in which they were made, and there was no clear error of judgment with respect to the amount awarded or the manner in which the award was made. The Orders on appeal are therefore AFFIRMED. The Clerk is directed to enter judgment accordingly, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this 27th day of May, 2015.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Mari Jo Taylor, Courtroom Deputy